# UNITED STATES DISTRICT COURT FOR THE
# NORTHERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| DEBRA D. VANSKYOCK, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) Case No. 11-CV-0388-CVE-TLW |
| | ) |
| SAINT-GOBAIN CONTAINERS, INC., | ) |
| | ) |
| Defendant. | ) |

## OPINION AND ORDER

Now before the Court is Defendant Saint-Gobain Containers, Inc.'s Motion for Summary Judgment (Dkt. # 34). Defendant Saint-Gobain Containers, Inc. (SGCI) seeks summary judgment on plaintiff's claim for sexual harassment in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000 et seq., (Title VII) and plaintiff's state law claim for negligent supervision. Plaintiff responds that there are factual disputes that preclude summary judgment.

## I.

Plaintiff has been an employee of SGCI since May 2001. In May 2008, plaintiff transferred from an SGCI plant in Indiana to a plant in Sapulpa, Oklahoma, where she still works today. Plaintiff is a journeyman machine operator, and she runs a machine that makes beer bottles. Due to the high temperatures needed to melt the glass for the beer bottles, the area where plaintiff works is extremely hot and loud. The employees have access to a break room that is approximately 8 feet by 8 feet and contains one table, some chairs, and a bulletin board. Since she transferred to the Sapulpa plant in 2008, plaintiff's supervisors have included Luke Nelson (Nelson), Richard Anderson, Larry Andrews (Andrews), Don Smith (Smith), Tony Roe, and Robert Thompson. The

production manager during the relevant time period was Jeff Balthis (Balthis) and the plant manager was Steve Cedoz. The human resources manager was Charles Richardson (Richardson) until January 2010, at which point the position was held by J.T. Charron (Charron).

Plaintiff states that, since shortly after she started working at the Sapulpa plant, she has been subjected to a series of lewd and sexist comments from her co-workers, and was the target of sexually explicit comments written on materials and photographs in the break room. Plaintiff kept a log of these comments and incidents in a notebook. However, she states that the notebook was stolen from her bag while she was working sometime in July 2010. Before plaintiff recorded incidents in the notebook, she often wrote notes of their occurrence on scraps of paper. Plaintiff was able to locate many of these scraps and has submitted them as part of the summary judgment record. Plaintiff also saved several of the sexually explicit notes and photographs that were left in the break room and has submitted those as part of the summary judgment record.

Plaintiff states that, in 2008, a co-worker told her she "had a nice ass" and asked whether her breasts were real. She also states that Balthis told her that her job was not a job for a woman and that she was a distraction to his men, while other co-workers stated that a woman's place was in the kitchen. Plaintiff states that she was subjected to a series of other lewd and suggestive comments in late 2008 and early 2009, and at some point during this period she wrote herself a note that she was "humiliated in Break room [by] smart alec [sic] sexual comments." Dkt. # 42-2 at 2. Plaintiff testified that she informed supervisor Nelson that her co-workers were "being really rude" and requested that he speak to them about it. Dkt. # 42-1 at 14. Plaintiff is unaware of whether Nelson followed up on her complaint.

Plaintiff testified that, on February 23, 2009, she found a lewd cartoon in the break room with her name written on it. Plaintiff stated that she threw the cartoon away and did not tell anyone about it. Plaintiff's calendar for February 2009 shows a note written under "February 23", which states "cartoon on table woman sucking man's dick says Deb swallows too." Dkt. # 34-3 at 3. Plaintiff's calendar for March 2009 shows a note written under "March 12" that says "more rude comments on magazine." Id. at 4. Plaintiff also submitted a note she wrote to herself that states "Aug 09 cartoon drawed [sic] in break room Larry Andrews me Jerry Smith. All having sex." In his deposition, Andrews admitted that plaintiff told him about this cartoon a few weeks or days after she found it. Dkt. # 34-14 at 10.

In September 2009, plaintiff states that co-worker Elton Dillon told her "I know why you like Jerry . . . so well, because his bald head and curly hair remind you of when you are sucking Larry's dick." Dkt. # 34-6 at 15. Plaintiff states that this comment was then made to other co-workers, and many of them, including union vice president Tim Millgate, continued to tease her about it for a few weeks. Andrews stated in his deposition that plaintiff told him about this incident. Dkt. # 34-14 at 11. Plaintiff testified that she also told Smith, her supervisor at the time, about Dillon's comment and the continuing teasing. Plaintiff states that she "was very upset and crying . . . and [Smith] told me he would talk to the guys." Dkt. # 34-1 at 13. Plaintiff does not believe Smith took any action. Smith testified that he did not remember plaintiff complaining to him at this time. Dkt. # 34-13 at 18; Dkt. # 42-3 at 14. Plaintiff also testified that she complained to human resources manager Richardson about Dillon's comment soon after it was made. Dkt. # 34-1 at 13. Richardson denies that plaintiff ever complained to him about sexual harassment. Dkt. # 34-19 at 2. Plaintiff additionally testified that she filed a grievance with the union in the fall of 2009 regarding the

3

inappropriate comments and drawings. Specifically, plaintiff stated that she told her union representative about the comments, but that the union representative left the company and the new union vice president told her that they never received the grievance. Dkt. # 34-2 at 1. Union representative Wayne Wilson (Wilson) testified that "there is a good possibility" that plaintiff filed a union grievance regarding sexual harassment around this time and that it "sounds familiar." Dkt. # 34-21 at 10; Dkt. # 42-11 at 10. Wilson stated that he believes he would have taken the grievance directly to Richardson in human resources. Dkt. # 42-11 at 8, 10. Wilson also testified that plaintiff had come to him multiple times to complain "of the issues that have been going on." Id. at 15.

Plaintiff testified that, during this time period, she was regularly called a "fucking bitch" by two of her co-workers and was repeatedly shoved and/or slapped by one of them. Plaintiff states that she complained to Smith about this behavior "several times," but she does not know if Smith took any action. Dkt. # 34-1 at 18.

Plaintiff states that, between the fall of 2009 and the summer of 2010, she found at least eight magazines or cartoons depicting sexually explicit material, many of which included handwritten comments. Plaintiff's calendar shows a note under October 5, 2009 that states "drawing in B.R." Dkt. # 34-3 at 11. Plaintiff does not recall what the drawing depicted but stated that "there have been many, many drawings" and that she did not write herself a note every time she saw a drawing. Dkt. # 34-1 at 12. Plaintiff has a specific memory and/or record of seven inappropriate pictures or photographs being left in the break room between May 2010 and July 2010, including: a magazine photograph found on May 31, 2010; the cover of a Maxim magazine depicting a woman in underwear with handwritten comments such as "I want to lick you Larry" and "Deb" written between the breasts; a copy of an advertisement depicting a woman in a sports bra and shorts riding

4

a bike with the comment "wanna be my bike" handwritten on it; a picture from a Maxim magazine of a woman in her underwear with "Debbie" handwritten on one arm, "I want to suck you" handwritten on the other arm, "Lick here Larry Joe" written on one thigh, and "This side too" on the other thigh with an arrow pointing towards the vagina; an article from a magazine called "ToplessTech" depicting six photographs of a topless woman; and a cartoon from a magazine showing a couple engaged in a sex act. Plaintiff removed and saved five of these items, copies of which were submitted as part of the summary judgment record. Dkt. # 42-12 through Dkt. # 42-20. Plaintiff states that, on June 3, 2010, she found a drawing of three stick figures having sex, one of which was identified as her. Plaintiff wrote a note to herself recounting the drawing with the notation "these people are sick!!!" Dkt. # 34-5 at 17.

On June 10, 2010, plaintiff filed a grievance with the union, which stated that she had been discriminated against "numerous times" on the basis of "sex, handicap, and disability." Dkt. # 34-3 at 20. The grievance form states that plaintiff has complaints of "other discrimination" that she would like to discuss. Id. at 18. Smith acknowledged that he saw the grievance and signed it, but that he did not follow up on plaintiff's claim of sexual discrimination. Dkt. # 42-3 at 23. Balthis also acknowledged that he signed the grievance and stated that he did not follow up with plaintiff on her sexual discrimination claim. Dkt. # 42-4 at 24.

On June 22, 2010, plaintiff wrote herself a note that, when she returned from vacation, she found a picture from Maxim magazine with the handwritten note "Damn the Bitch is gone now who can I Fuck." Dkt. # 34-6 at 10. On June 30, 2010, plaintiff wrote a note that she found another picture of a girl with the handwritten notation "Larry Joe's dick sucking bitch." Dkt. # 34-5 at 19.

5

Plaintiff states that, in early July 2010, she found pornographic magazines in the break room, at which point she put the magazines into a plastic bag along with a note and left them on Balthis' desk. Dkt. # 34-2 at 13. The note, a copy of which was submitted with the summary judgment record, states:

> <u>This</u> is the last time I will be embarrassed, humilated [sic] or threatened by verbal harassment, sexual drawings, cartoons and explicit magazines with and without clothes and with and without my name plastered on them. I have gone home for the last time - upset - crying - frustrated. I have tried to correct this problem thru the chain of command. But it only continues and keeps getting worse. . . . I will be taking this issue outside the plant. I cannot work under these conditions any longer.

Dkt. # 42-28 at 1. Balthis testified that he remembers finding the bag of magazines, opening it, and throwing it away, but he states that he did not see the note from plaintiff. Dkt. # 34-10 at 9-10. Charron testified that plaintiff also brought the magazines to his attention in early July 2010. Dkt. # 34-8 at 8. Plaintiff testified that she repeatedly informed Andrews about the inappropriate comments and pictures. Dkt. # 42-1 at 13. Andrews testified that he knew about the magazines, but did not remember whether plaintiff had personally brought them to his attention. Dkt. # 42-5 at 10-13. Andrews further testified that he heard about various inappropriate incidents involving plaintiff, but that he never took any action or reported anything to the human resources manager. Dkt. # 42-5 at 16, 21.

On July 15, 2010, plaintiff filled out an intake questionnaire with the Oklahoma Human Rights Commission, in which she stated that she was being discriminated against based on race and sex and that, since May 2008, she had been subject to "sexual comments/harass [sic] rude sexual cartoons with my name on them, vulgar pornography magazines spread out in the break room." Dkt. # 34-4 at 17, Dkt. # 34-5 at 1-2.

6

Smith testified that he was shown one of the inappropriate magazine pictures by Charron in mid-July 2010, and that Smith promptly held a sexual harassment training for many of the employees on his shift using materials he downloaded from the Equal Employment Opportunity Commission (EEOC) website. Dkt. # 42-3 at 19-21. Smith did not confer with defendant or human resources before doing the training and he does not recall if defendant ever conducted an official training. Id.

On October 6, 2010, plaintiff filed a charge of discrimination with the Oklahoma Human Rights Commission and with the EEOC, which stated that she had been subject to sexual harassment since 2008. Dkt. # 34-4 at 14. On December 15, 2010, plaintiff again brought the harassment to the attention of Cedoz and Charron. Dkt. # 34-2 at 10. According to his notes, Charron asked plaintiff if the harassment had continued after she had brought it to his attention in July and filed the EEOC complaint, and plaintiff stated that it had stopped. Dkt. # 34-16 at 8. According to his notes and testimony, Charron conducted an investigation of the harassment during which he interviewed three people out of the sixteen people on plaintiff's shift.

Plaintiff filed her complaint on June 21, 2011 alleging claims of sexual harassment, gender discrimination, retaliation, and negligent supervision. Dkt. # 2. The claims for gender discrimination and retaliation were voluntarily dismissed on March 14, 2012. Dkt. # 33. Plaintiff states that the alleged harassment has caused her to suffer from stomach problems, insomnia, migraines, chest pains, and acid reflux. Dkt. # 42 at 19. Plaintiff has also stated that the alleged harassment has caused her a large amount of stress and nervousness, resulting in vomiting and crying on an almost daily basis. Id. Defendant has moved for summary judgment on plaintiff's sexual harassment and negligent supervision claims.

7

## II.

Summary judgment pursuant to Fed. R. Civ. P. 56 is appropriate where there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. Celotex Corp. v. Catrett, 477 U.S. 317, 322–23 (1986); Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 250 (1986); Kendall v. Watkins, 998 F.2d 848, 850 (10th Cir. 1993). The plain language of Rule 56(a) mandates the entry of summary judgment "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); see also Celotex, 477 U.S. at 317. "Summary judgment procedure is properly regarded not as a disfavored procedural shortcut, but rather as an integral part of the Federal Rules as a whole, which are designed 'to secure the just, speedy and inexpensive determination of every action.'" Id. at 327.

"When the moving party has carried its burden under Rule 56[a], its opponent must do more than simply show that there is some metaphysical doubt as to the material facts. . . . Where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no 'genuine issue for trial.'" Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586-87 (1986) (citations omitted). "The mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient; there must be evidence on which the [trier of fact] could reasonably find for the plaintiff." Anderson, 477 U.S. at 252. In essence, the inquiry for the Court is "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." Id. at 250. In its review, the Court construes the record in the light most favorable to the party opposing summary judgment. Garratt v. Walker, 164 F.3d 1249, 1251 (10th Cir. 1998).

**III.**

**A.     Title VII Sexual Harassment Claim**

Defendant argues that it is entitled to summary judgment on plaintiff's Title VII claim for sexual harassment because plaintiff has failed to establish that the alleged harassment was sufficiently severe or pervasive. Defendant also argues that it is not liable for any alleged harassment because the undisputed facts show that it did not have knowledge of the co-workers' behavior. Plaintiff responds that the alleged harassment was sufficiently severe or pervasive to support a claim under Title VII and that there are disputed issues of fact as to when defendant had knowledge of the alleged harassment.

Title VII prohibits an employer from discriminating against an individual because of an individual's sex, and unlawful discrimination may take the form of a hostile work environment. 42 U.S.C. § 2000e-2(a)(1); Meritor Savings Bank, FSM v. Vinson, 477 U.S. 57, 65 (1986). To prevail on a sexual harassment claim under a hostile work environment theory, a plaintiff must prove four elements: "(1) she is a member of a protected group; (2) she was subject to unwelcome harassment; (3) the harassment was based on sex; and (4) [due to the harassment's severity or pervasiveness], the harassment altered a term, condition, or privilege of the plaintiff's employment and created an abusive working environment." Dick v. Phone Directories Co., Inc., 397 F.3d 1256, 1263 (10th Cir. 2005) (quoting Seymore v. Shawver & Sons, Inc., 111 F.3d 794, 797-98 (10th Cir. 1997)). Defendant does not contest, for purposes of summary judgment, that plaintiff is a member of a protected group, that she was subject to unwelcome harassment, or that the harassment was based

9

on sex. Defendant argues that plaintiff cannot satisfy the fourth element of a sexual harassment claim because the harassment was not severe or pervasive.[1]

The Tenth Circuit has established that the severe and pervasive nature of alleged sexual harassment must be established under objective and subjective standards. Harrison v. Eddy Potash, Inc., 248 F.3d 1014, 1023 (10th Cir. 2001). Concerning the subjective aspect of a hostile work environment, the victim must show that she "subjectively perceive[d] th[at] environment to be abusive." Id. The objective component of a hostile work environment claim requires a plaintiff to present evidence that a "reasonable person" would find the same harassment so severe and pervasive that the workplace is objectively hostile or abusive. The Tenth Circuit has stated:

> Title VII's prohibition of harassment on the basis of sex forbids only behavior "so objectively offensive as to alter the 'conditions' of the victim's employment." [Oncale v. Sundowner Offshore Servs., Inc., 523 U.S. 75, 81 (1998)]. Put otherwise, "conduct that is not severe or pervasive enough to create an objectively hostile or abusive work environment-an environment that a reasonable person would find hostile or abusive-is beyond Title VII's purview." *Id.* Thus, the Supreme Court made clear that juries ought not find prohibited harassment merely based on ordinary socializing, such as intersexual flirtation. *Id.* Instead, the jury is to judge the objective severity of the harassment from the perspective of a reasonable person in the plaintiff's position, considering all the circumstances.

Harsco Corp. v. Renner, 475 F.3d 1179, 1186 (10th Cir. 2007). The Supreme Court has provided several non-exclusive factors that district courts should consider to determine if alleged sexual

---

[1] Defendant also argues that the two comments made to plaintiff by Balthis in 2008 regarding women in the workforce are time barred. However, "[r]ecovery on a Title VII hostile work environment claim includes acts taken outside the statutory time period because the entire hostile work environment encompasses a single unlawful employment practice." Ford v. Donley, No. CIV-10-181-C, 2011 WL 3177014, at *7 (W.D. Okla. July 27, 2011); see also Nat'l R.R. Passenger Corp. v. Morgan, 536 U.S. 101, 117-18 (2002); Boyer v. Cordant Techs., Inc., 316 F.3d 1137, 1140 (10th Cir. 2003).

10

harassment is severe and pervasive: "the frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance." Harris v. Forklift Systems, Inc., 510 U.S. 17, 23 (1993). Any psychological harm suffered by the victim is also relevant, but this is simply another non-dispositive factor for a court to consider. Id. Finally, the Tenth Circuit has noted that "the severity and pervasiveness evaluation is particularly unsuited for summary judgment because it is quintessentially a question of fact." O'Shea v. Yellow Tech. Servs., Inc., 185 F.3d 1093, 1098 (10th Cir. 1999) (internal quotations omitted).

The evidence and inferences viewed in favor of plaintiff show that between approximately May 2008 and October 2010, she was subject to a series of lewd and sexist comments and was exposed to more than a dozen sexually suggestive or explicit cartoons or magazines, many of which had her name written on them and alluded to her having sex with other employees. Defendant does not dispute that plaintiff has alleged that she subjectively believed the work environment to be abusive. Dkt. # 41 at 23. Instead, defendant argues that a reasonable person would not find the conduct described by plaintiff to be severe and pervasive. Defendant relies heavily on the concept that plaintiff "works in a blue collar, predominately male, factory setting, and the conduct in question should be evaluated in that context." Id. at 23. Defendant is correct that the Tenth Circuit has stated that a court must examine the work environment of the particular plaintiff and be aware that "profanity and vulgarity are not perceived as hostile or abusive" in certain workplaces, but rather that in certain settings "indelicate forms of expression are accepted or endured as normal human behavior." Gross v. Burggraf Constr. Co., 53 F.3d 1531, 1537 (10th Cir. 1995). However, this does not give an individual working in a factory carte blanche to make repeated deliberate

11

sexually explicit comments specifically targeted at a particular employee. The harassment alleged by plaintiff goes far beyond "ordinary socializing," "intersexual flirtation," or "indelicate forms of expression." Having considered the evidence submitted by the parties, the Court finds that a rational jury could find that a work environment in which an employee is subject to repeated jeers about her sexual activity and exposed to multiple sexually explicit pictures or cartoons, many of which refer to her specifically, is objectively hostile.

Defendant next argues that, even if the conduct were severe and pervasive, defendant cannot be held liable for the conduct of its employees because it did not have actual knowledge of the harassment and that, once it had actual knowledge, it took prompt and adequate action to curtail it. "In addition to establishing the hostile work environment elements, the plaintiff must also identify a basis for holding the employer liable under Title VII." Chapman v. Carmike Cinemas, 307 Fed. Appx. 164, 168 (10th Cir. 2009)(unpublished).[2] The Tenth Circuit has recognized three bases for holding an employer liable for a hostile work environment:

> (1) the conduct violating Title VII occurred within the transgressor's scope of employment; (2) if the employer knew, or should have known about, the violation and failed to respond in a reasonable manner; or (3) if the transgressor acted with apparent authority or was aided in violating the statute by virtue of their [sic] agency relationship with the employer.

Wright-Simmons v. City of Oklahoma City, 155 F.3d 1264, 1269-70 (10th Cir. 1998). Plaintiff relies on the second basis, that defendant failed to remedy a situation about which it knew or should have known. The focus in this inquiry "is not on whether the employer is liable for the bad acts of others, but whether the employer itself is responsible for failing to intervene." Chapman, 307 Fed.

---

[2] Unpublished decisions are not precedential, but may be cited for their persuasive value. See Fed. R. App. P. 32.1; 10th Cir. R. 32.1.

Appx. at 171. In this context, "courts must make two inquiries: first, into the employer's actual or constructive knowledge of harassment, and second, into the adequacy of the employer's remedial and preventative responses to any actually or constructively known harassment." Adler v. Wal-Mart Stores, Inc., 144 F.3d 664, 673 (10th Cir. 1998). An employer is obligated to respond only to harassment of which it actually knew or, in the exercise of reasonable care, should have known. Id. Once harassment is reported to a supervisor, the employer's "obligation to respond adequately and promptly [is] triggered." Lockard v. Pizza Hut, Inc., 162 F.3d 1062, 1075 (10th Cir. 1998).

Defendant argues that, when the harassment was reported to Charron in July 2010, defendant acted promptly and adequately in conducting an investigation and holding a sexual harassment training. However, defendant dismisses plaintiff's testimony that she informed supervisors and union representatives of the harassment at least seven times prior to July 2010, the first time in 2008 when she complained to Nelson that her co-workers were making inappropriate comments. Andrews and Wilson even admit that they were aware of allegations of harassment as early as September 2009. The Court has reviewed the evidence submitted by the parties and finds that there is a genuine dispute as to when defendant was sufficiently put on notice of the alleged harassment. Viewing the evidence in the light most favorable to plaintiff, the Court finds that, at a minimum, the evidence provides a reasonable basis for the parties to dispute the date when defendant knew of the harassment, and the finder of fact should decide this issue. Due to the genuine disputes as to material fact, defendant's motion for summary judgment on the Title VII claim is denied.

**B.     Negligent Supervision**

Defendant argues that plaintiff's state law claim for negligent supervision must fail because "there is no evidence to support that SGCI knew or should have known that any of its employees

allegedly had a propensity to allegedly create a hostile working environment." Dkt. # 41 at 29. Under Oklahoma law, an employer may be held liable for negligent supervision "if-at the critical time of the tortious incident-, the employer had reason to believe that the person would create an undue risk of harm to others. Employers are held liable for their prior knowledge of the servant's propensity to commit the very harm for which damages are sought." Escue v. N. Okla. Coll., 450 F.3d 1146, 1156 (10th Cir. 2006) (internal quotations omitted). As noted above, there is a disputed issue of fact regarding when defendant was informed of the behavior of plaintiff's co-workers. Thus, there is a disputed issue of fact as to when defendant had reason to believe that one of its employees would create an undue risk of harm to others. Consequently, the Court cannot find as a matter of law that defendant cannot be liable for the employees' actions. Summary judgment on this claim must be denied.

**IT IS THEREFORE ORDERED** that Defendant Saint-Gobain Containers, Inc.'s Motion for Summary Judgment (Dkt. # 34) is **denied**.

**DATED** this 23rd day of April, 2012.

_____
CLAIRE V. EAGAN
UNITED STATES DISTRICT JUDGE